IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN LINDER,

Petitioner, No. CIV S-10-0941 GGH P

vs.

RICHARD B. IVES,

Respondent. ORDER

_______________________________/

Background

Petitioner is a federal prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of the undersigned.[1] Petitioner was sentenced to an aggregate 255-month prison term as follows: petitioner pled guilty to "conspiracy to possess with intent to distribute quantities of cocaine and cocaine base" in violation of 18 U.S.C. §§ 846 & 841, and was sentenced to 215 months on August 7, 2003, in the Western District of North Carolina. Petition, p. 2; Answer, p. 2 & Attachment 1 (docket # 10-1), Judgment in Criminal Case # 5:02CR37-5-V, pp. 2- 4.[2] He

---

[1] See petitioner's signed consent form, filed at docket # 3 and respondent's signed consent form filed at docket # 8.

[2] Petitioner indicates that he was sentenced for this offense on July 7, 2003, but the "Judgment in a Criminal Case" for Case No. 5:02CR37-5-V indicates it was a month later. Id.

thereafter pled guilty to "knowingly escap[ing] from the custody of an institutional facility in which he was lawfully confined" in violation of 18 U.S.C. § 751, and was sentenced, on February 18, 2004, to a 40-month term to be served consecutively to the prior sentence. Id., Judgment in Criminal Case # 5:03CR41-1-V, pp. 5-9.[3] Petitioner was additionally ordered to serve five years and three years on supervised release upon his projected release date which is scheduled to be October 23, 2021, with Good Conduct Time Release. Petition, p. 2; see also, Answer, p. 2 & Attachment 2, Public Information Data, Good Conduct Time Release. Petitioner was originally serving his sentence at the United States Penitentiary (USP) Big Sandy, but, according to petitioner, due to being "infraction free and maintaining good programming," he "was transferred to a medium facility," Federal Correctional Institution (FCI) Herlong. Petition, p. 2. Petitioner's recent notice of a change of address indicates that petitioner is now housed at USP Atwater.[4] See docket # 14, Notice of Change of Address, filed on January 5, 2012. Petitioner contends that he is being deprived of his liberty interest because he is being confined in prison rather than in a community correctional center (CCC) program for the duration of his sentence. Petition, p. 2.

Administrative Exhaustion

Respondent asserts that petitioner has failed to exhaust his administrative remedies prior to filing the instant petition. Answer, pp. 3, 6-9. Petitioner concedes both that it is well settled that before prisoners file a petition under § 2241, federal prisoners must exhaust administrative remedies and that he has not exhausted his remedies. Petition, pp. 3-4, citing, inter alia, Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986). However, petitioner maintains

---

[3] In Case No. 5:03CR41-1-V, petitioner again differs with the sentencing date noted above on the "Judgment in a Criminal Case," stating that he was sentenced on January 9, 2004. See Petition, p. 2.

[4] Despite petitioner's transfer, this court retains jurisdiction of this § 2241 petition. Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990)("jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change" [internal quotations omitted]).

exhaustion should be excused in his case as futile. Id., at 4. Respondent argues that to excuse the lack of administrative exhaustion "would create such an exception to the PLRA [Prison Litigation Reform Act] where none is allowed." Answer, p. 7, citing Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 990-91 (2002).

There is no statutory requirement, pursuant to 28 U.S.C. § 2241, that federal prisoners must exhaust administrative remedies before filing a habeas corpus petition in court, thus it is not a jurisdictional prerequisite. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds by Reno v. Koray, 515 U.S. 50, 115 S. Ct. 2021 (1995). Nevertheless, federal courts "require as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.... Prudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional." Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001), abrogated on another ground by Fernandez-Vargas v. Gonzales, 548 U.S. 30, 126 S. Ct. 2422 (2006); see also, Cristobal v. Cruz, 2007 WL 2746742 *1 (N.D. Cal. 2007). Thus, while "courts have discretion to waive the exhaustion requirement when prudentially required, this discretion is not unfettered." Laing v. Ashcroft, 370 F.3d 994, 998 (9th Cir. 2004). Requiring administrative exhaustion (1) allows for "the appropriate agency to develop a factual record and apply its expertise" which "facilitates judicial review;" (2) permits agencies to grant the requested relief thus conserving judicial resources; and (3) "fosters administrative autonomy" by providing agencies an opportunity to correct their own mistakes. Sanders v. Warden, USP-Allenwood, 2008 WL 4006755 *1 (M.D. Pa. 2008), quoting Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir.1996). Nonetheless, as articulated by the Ninth Circuit:

> [w]e do not hold that the exhaustion requirement can never be waived. In *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir.1981), we noted that "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings

> would be void." See also *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2nd Cir.2003) ("Specifically, exhaustion of administrative remedies may not be required when (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.") (internal quotation marks omitted). Similar concerns govern a court's determination of whether to excuse a failure to exhaust judicial remedies.

Laing v. Ashcroft, 337 F.3d at 1000-01; see also, Murgia v. Copenhaver, 2009 WL 3707113 *2 (N. D. Cal. 2009).

Finally, as in all habeas corpus matters, petitioner has the burden of demonstrating exhaustion in a § 2241 habeas petition. Coady v. Vaughn, 251 F.3d 480, 488 (3rd Cir. 2001); Williams v. O'Brien, 792 F.2d 986 (10th Cir. 1986).

*Administrative Appeal Process*

> The Bureau of Prisons ("BOP") has established a multi-tier system by which a prisoner may seek formal review of any aspect of his imprisonment. See 28 C.F.R. §§ 542.10-542.16 (1994). First, "[i]nmates shall informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for Administrative Remedy." *Id*., at § 542.13(a). Second, "[i]f an inmate is unable to informally resolve his complaint, he may file a formal written complaint [to the warden], on the appropriate form, within twenty (20) calendar days of the date on which the basis of the complaint occurred." *Id*., at § 542.15(a). In the event the inmate is dissatisfied with the warden's response, he may file an appeal to the BOP Regional Director within twenty (20) days. Id., § 542.15(a). Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed to the BOP Central Office within thirty (30) calendar days from the date of the Regional Director's response. *Id*. No administrative remedy appeal is considered to have been fully exhausted until rejected by the BOP's Central Office. 28 C.F.R. § 542, et seq.

Sanders v. Warden, supra, 2008 WL 4006755 at*2.

Petitioner evidently filed in this court after receiving the warden's response, in other words, only after having received the initial formal level denial. That response from the warden, dated April 9, 2010, is set forth in the next section of this order. Answer, Attachment 3 (docket # 10-1), p. 17. In order to have exhausted administratively, petitioner would have had to

proceed to the filing of an appeal to the Regional Director. Had he received a denial from the Regional Office, he would have had to take the final step to exhaust by filing a BP-11 form to the BOP General Counsel in Washington, D.C. Martinez v. Roberts, 804 F.2d at 571. Petitioner maintains, however, that he would be subjected to irreparable injury if required to exhaust and, based on the policy the Board of Prisons is following (see below), to proceed beyond the warden's response would have been futile. Traverse, p, 2. Based on the substance of petitioner's claim, it does appear that it would have been futile for petitioner to exhaust his claim administratively, primarily for the reason that his claim lacks merit. In any case, the court will, in this instance, address the substance of his claim despite his failure to exhaust administratively. *Cf* 28 U.S.C. § 2254 (b)(2) (permitting a court to bypass an exhaustion issue in a state habeas matter if the petition would be denied on its merits.)

Substantive Claim

As noted, petitioner claims that he has a liberty interest in being confined in a community correctional center (CCC) program rather than a prison for the duration of his sentence. Petition, p. 2, citing, inter alia, Rodriguez v. Smith, 541 F.3d 1180, [1189] (9th Cir. 2008) (finding that BOP [Board of Prisons] regulations conflicted "with the plain language of 18 U.S.C. § 3621(b) as to when an inmate may be considered for initial placement in or transfer to an RRC [Residential Re-entry Center]" and affirming the writ granted by the district court ordering petitioner to be considered promptly for an RRC transfer "without reference to 28 C.F.R. §§ 570.20 and 570.21"; Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004) (holding that 18 U.S.C. § 3621(b) authorizes transfer of petitioner "to a CCC at any time during his prison term" and is not subject to "temporal limitations of 18 U.S.C.§ 3624(c)"); Howard v. Ashcroft, 248 F. Supp.2d 518, 520, 544-47 (M.D. La. 2003) (granting preliminary injunction to enjoin BOP from retroactive application of new policy used in attempt to transfer petitioner from CCC to federal corrections facility); Estes v. Federal Bureau of Prisons, 273 F. Supp. 2d 1310-11 (S.D. Ala. 2002) (holding that BOP exceeded its statutory authority in adopting policy of December 20,

2002, which purported to limit BOP's exercise of discretion under 18 U.S.C. § § 3621(b).

Petitioner argues that the analytical scheme of Chevron militates for his immediate placement in CCC/RRC. Petition, pp. 5-6, referencing Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,467 U.S. 837, 104 S. Ct. 2778 (1984). In Chevron, the Supreme Court stated:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. []
> If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, [] as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. []

Id., at 842-43, 104 S. Ct. at 2781-82.

Employing the Chevron analysis, the Ninth Circuit in Rodriguez, 541 F.3d at 1184-85, noting the plain language of 18 U.S.C. § 3621(b), first determined that BOP's discretion to determine prisoner placements is clear from the text of that statute, which states in part that "[t] Bureau of Prisons shall designate the place of the prisoner's imprisonment . . ." . The Ninth Circuit also found that the meaning of 18 U.S.C. § 3624(c) which required "to the extent practicable" that the BOP assured that a prisoner spend "a reasonable part, not to exceed six months," of the final ten percent of the term "be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community." Rodriguez v. Smith, 541 F.3d at 1184. Therein, the court noted the 2008 statutory amendment that slightly reworded the BOP's affirmative duty "to ensure to the extent practicable the release of the prisoner during the final months of the prisoner's term" but found that the amendment did not affect its opinion. Id., at n. 4. Petitioner is correct as far as he goes with respect to this circuit's having found that the former 28 C.F.R. § 570.21 to be inconsistent with

18 U.S.C. § 3621(b), and, thus, invalid. Rodriguez, 541 F.3d 1180. However, subsequently, Congress enacted the Second Chance Act of 2007 (codified at 42 U.S.C. §§ 17501–17555, amending 18 U.S.C. §§ 3621(b) and 3624(c)).

18 U.S.C. § 3621(b), effective as of April 9, 2008, sets forth, in full, the following (the undersigned has italicized the amended portion which has been added to subsection b):

> **Place of imprisonment**.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
>
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse. *Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to*

*determine or change the place of imprisonment of that person.*

18 U.S.C. § 3624(c) was amended as follows, effective as of April 9, 2008 (with the most recent prior incarnations provided at footnote five)[5]:

**Prerelease custody**.--

**(1) In general**.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

**(2) Home confinement authority**.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

**(3) Assistance.**--The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.

**(4) No limitations**.--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

**(5) Reporting**.--Not later than 1 year after the date of the enactment of the Second Chance Act of 2007 (and every year thereafter), the Director of the Bureau of Prisons shall transmit to

---

[5] **"(c) Pre-release custody**.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody." 18 U.S.C. § 3624(c), effective from January 7, 2008 until April 8, 2008.

"**(c) Pre-release custody**.- - The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody." 18 U.S.C. § 3624(c), effective from April 26, 1996 to January 6, 2008.

> the Committee on the Judiciary of the Senate and the Committee on the Judiciary of the House of Representatives a report describing the Bureau's utilization of community corrections facilities. Each report under this paragraph shall set forth the number and percentage of Federal prisoners placed in community corrections facilities during the preceding year, the average length of such placements, trends in such utilization, the reasons some prisoners are not placed in community corrections facilities, and any other information that may be useful to the committees in determining if the Bureau is utilizing community corrections facilities in an effective manner.
>
> **(6) Issuance of regulations.**--The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is--
>
> > (A) conducted in a manner consistent with section 3621(b) of this title;
> >
> > (B) determined on an individual basis; and
> >
> > (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

Petitioner maintains that the Second Chance Act is in conflict with § 3621(b) because § 3621(b) requires the BOP to consider certain factors for CCC placement but an unidentified regulation arising from the Second Chance Act provides that the BOP "may not consider those factors in full." Petition, p. 6. However, in a class action brought under § 2241 by federal prisoners in Oregon challenging BOP policies by which inmates were placed in community correctional facilities/residential re-entry centers on the ground that the policies contravened the statutory provisions, 18 U.S.C. §§ 3621(b) and 3624(c), they purported to implement, the Ninth Circuit, in Sacora v. Thomas, 628 F.3d 1059, 1067 (9th Cir. 2010), after acknowledging that Rodriguez, 541 F.3d at 1187, had invalidated the prior version of the regulations codified at 28 C.F.R. §§ 520.20 and 520.21 on the ground that it "categorically exclude[d] inmates from RRC eligibility without considering the mandatory factors articulated in § 3621(b)[,]" found that "[n]o such problem exists here":

> The BOP's policy—that six months in a RRC constitutes a "sufficient duration" in most cases, but that each inmate is eligible for a 12–month placement and must be considered for placement in a RRC on an individual basis—is facially consistent with the statute. [Footnote omitted].

Sacora v. Thomas, 628 F.3d at1066.

> Although the November 14 Memorandum does set forth a presumption that RRC placements of longer than six months should occur only "when there are unusual or extraordinary circumstances justifying such placement[ ] and the Regional Director concurs," the Memorandum also admonishes BOP staff that they "cannot ... automatically deny an inmate's request for transfer to a RRC" because "[i]nmates are legally eligible to be placed in an RRC at any time during their prison sentence[s]." The memorandum also reminds the BOP staff that they "must individually consider the request, just as they would any other request for lower security transfer." Further, the memorandum reminds the staff that when they review an inmate's transfer request, they should review the five factors set forth in 18 U.S.C. § 3621(b) that, we noted in Rodriguez, are "mandatory." Rodriguez, 541 F.3d at 1187. Accordingly, we conclude that the BOP's policy as set forth in the November 14 Memorandum does not violate the SCA.

Id., at 1067.

At the first formal level appeal denial of the instant petitioner's request for 1.CCC/RCC or home confinement placement, pursuant to § 3621(b),[6] respondent Warden Ives, signed the following decision, dated April 9, 2010:

> This is in response to your request for Administrative Remedy dated March 17, 2010, wherein you are requesting placement in a Community Corrections Center/home confinement for the remainder of your sentence.
>
> An investigation into this matter reveals your unit team considered your request pursuant to the *Second Chance Act of 2007*, on an individual basis for Residential Reentry Center (RCC) placement. The following criteria was considered when making the RCC determination.
>
> 1) The resources of the facility contemplated;
> 2) The nature and circumstance of the offense;

[6] See request at docket # 10-1, Attachment 3 to Answer, p. 16.

3) The history and characteristics of the prisoner;
4) Any statement of the court that imposed the sentence;
(a) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
(b) recommending a type of penal or correctional facility as appropriate; and
5) Any pertinent policy statement issued by the U.S. Sentencing Commission.

It was determined that you are not currently eligible for transfer to an RRC at this time. RRC placements are meant as a transitional environment for inmates nearing the end of their sentences. You have a Projected Release Rate (PRD) of October 23, 2021, via Good Conduct Time release. This is why you have a Sentence Length Public Factor (PSF) applied. In accordance with Program Statement 5100.08, Inmate Security Designation and Custody Classification Manual, Chapter 5, Page 9, inmates with this PSF with more than ten years left on their sentences will be housed in at least a Low security facility. Additionally, you have a Public Safety for Escape which denotes that you are an escape risk. When you are within 17-19 months from your PRD, you will be assessed under the criteria of the Second Chance Act for RRC placement.

In view of the above, there is no basis for relief, and your request for Administrative Remedy is denied.

If you are dissatsified with the above findings, you may submit a Regional Appeal via Form BP-220(13), to the Regional Director, Federal Bureau of Prisons, Western Regional Office...20 calendar days... .

Answer, Attachment 3 (docket # 10-1), p. 17.

Respondent argues that petitioner's petition is premature and thus is not ripe for review based on his 2021 projected release date and the explanation provided by the warden's administrative remedy response that, based on his security level and escape risk, he will not be considered for an RCC transfer until 17-19 months before his projected release date.[7] Answer,

\\\\\

[7] Respondent notes that petitioner is estimated to be considered for pre-release RCC placement in 2019. Answer, p. 5, footnote 1. In his supplemental brief, petitioner asserts that he has less than ten years left on his sentence. Petitioner's Supplemental Brief, p. 2.

pp. 3-4, citing Abbot Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S. Ct. 1507 (1967)[8] ("[w]ithout undertaking to survey the intricacies of the ripeness doctrine [] it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties [footnote omitted]"); (Citizens for Better Forestry v. U.S. Dep't. of Agriculture, 341 F.3d 961, 976-77 (9th Cir. 2003) relying on Ohio Association, Inc. v. Sierra Club, 523 U.S. 726, 733, 118 S. Ct. 1665 (1998). The "three-pronged test for ripeness" for judicial review of an administrative challenge, set forth in Ohio Association, at 733, includes: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." Petitioner argues that this matter is ripe for review based on his erroneous belief that respondent has illegally refused to consider him for RCC/CCC placement and that in doing so respondent has been arbitrary and capricious and in defiance of congressional intent. Traverse, p. 3.

However, respondent's argument misses the point. There are no further planned administrative hearings for petitioner's *present* claim – he desires to be placed in a community center, *now*. He received his final, negative answer from the warden, and the administrative action on that request is now deemed final for exhaustion purposes. The fact that petitioner will be considered for community placement years from now does nothing to rectify petitioner's present complaint.

However, respondent is correct that an inmate does not have a right to be confined in, or transferred to, any particular prison. Answer, p. 5, citing, inter alia, Olim v. Wakinekona,

---

[8] Abrogated on another ground by Califano v. Sanders, 430 U.S. 99, 97 S. Ct. 980 (1977).

461 U.S. 238, 244-50, 103 S. Ct. 1741 (1983); Meachum v. Fano, 427 U.S. 215, 223-225, 96 S. Ct. 2532, 2538 (1976) (the Constitution does not guarantee a prisoner placement in a particular prison or protect an inmate against being transferred from one institution to another); see also, Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir.1985) (prison authorities may change a prisoner's "place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another" without violating the prisoner's due process rights).

Respondent relies on an Eighth Circuit case for authority for respondent's assertion that petitioner "has no right to receive consideration for RCC placement on demand." Answer, p. 5, citing Miller v. Whitehead, 527 F.3d 752, 757 (8th Cir. 2008); citing also, Comito v. Fed. Bureau of Prisons, 2008 WL 850216 *7 (E.D. Cal. 2008) ("There is no authority of which this Court has been alerted to which would require the BOP to conduct an RRC eligibility review or immediately transfer an inmate to an RRC upon an inmate's demand."). In any event, petitioner received the individual consideration which Sacora, supra approved, but he was found ineligible.

In his petition, petitioner speaks of being one of three children, his brother being a co-defendant, whose ailing mother has had two strokes and lives in public housing; his sister is the provider not only of her own household and an ill mother, she also sends her two brothers money. Petition, p. 6. Petitioner, who states he has been incarcerated since he was twenty-four, contends that he has learned over the years the importance of being a positive support for his family. Id. Petitioner states that he is a certified machine operator and a certified quality [control] inspector, "is a lead builder and has graduated from community college in the field of furniture" and that his home town is one of the largest furniture producers in North Carolina. Traverse, p. 3. Petitioner is also concerned about his mother's worsening health condition. Id., at 3-4. Petitioner argues that his request for RRC placement is based on a desire to help his ill mother before it is too late. Id., at 4.

> For the reasons outlined above in Sacora, Petitioner's challenge to the BOP's current policy is without merit. Petitioner also appears to argue that the BOP improperly analyzed the relevant § 3621(b) factors in his individual case and circumstances. In support of this argument, Petitioner presents "mitigating information" to support this argument, specifically, the deteriorating health of his mother. While Petitioner obviously disagrees with the determination related to BOP's 2010 evaluation, the BOP has sole discretion to place an inmate into "any available penal or correctional facility" and to "direct transfer of an inmate from one penal or correctional facility to another ... at any time." 18 U.S.C. § 3621(b). The only limit to that discretion is that the BOP must undertake an individualized consideration of an inmate for placement based on the five-factor criteria set forth in 18 U.S.C. § 3621(b). That individualized consideration was conducted in this case as exemplified by the warden's June 16, 2010 response which specifically noted that his decision considered the relevant § 3621(b) factors. Petitioner is not entitled to any relief greater than that in this federal habeas action. See Binford v. Ives, Civ. No. 10–945, 2011 WL 1791198, at *4 (D.Or. May 10, 2011) (denying habeas petition where "it was evident that the BOP provided the individualized consideration required under § 3621(b). The statute does not require more."); Burnham v. Ives, Civ. No. 08–2522, 2010 WL 2612609, at *8 (E.D.Cal. June 29, 2010) (holding that Petitioner's claim is moot where he received the only relief that could be properly ordered by the court, an individualized consideration of his transfer request in accordance with § 3621(b) and § 3624(c)) (citations omitted). Therefore, this argument does not warrant federal habeas relief as well.

Bozeman v. Ives, 2011 WL 2433662, *5 (E.D. Cal. 2011). These Findings and Recommendations, filed on June 14, 2011, were adopted by Order, filed on July 18, 2011, in Case No. CIV-S-10-1883 MCE TJB.

Just as was the petitioner in Bozeman, cited above, petitioner was provided the individualized consideration to which he was entitled under 18 U.S.C. § 3621(b), as evidenced by the warden's April 9, 2010, response to his administrative request. That petitioner may have

\\\\\

\\\\\

\\\\\

\\\\\

\\\\\

sincere, heartfelt reasons for seeking the transfer, does not give the court authority to override BOP.

Accordingly, IT IS ORDERED that the petition is denied.

DATED: April 18, 2012

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH:009

lind0941.hab